IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CSX REALTY DEVELOPMENT, LLC,                    *

      Plaintiff,                                              *

           v.                                              *   Civil Action No.: RDB 05-125

RIVER ENTERPRISES, LLC and                         *
JAMES QUILLEN,
                                                                   *
      Defendants.
                                                                   *

MEMORANDUM OPINION

This action arises out of a complaint that CSX Realty Development, LLC, a Georgia

company ("CSX"), filed against River Enterprises, LLC, a Maryland company ("River

Enterprises") and James Quillen, a Maryland resident ("Quillen").  Pending before this Court are

the parties' cross-motions for summary judgment.  CSX seeks judgment as a matter of law on

two counts of breach of contract.  The first count alleges that River Enterprises breached its

promise to compensate CSX for failing to complete an agreement to purchase real estate.  The

second count contends that Quillen—as the escrow agent in the underlying transaction—violated

the same purchase agreement by failing to hold and disburse funds that River Enterprises placed

in escrow.  In response, River Enterprises and Quillen argue that the purchase agreement lacks

consideration and is therefore void as a matter of law.  This Court has jurisdiction pursuant to 28

U.S.C. § 1332.  The parties' submissions have been carefully reviewed and a hearing was

conducted on December 16, 2005.  For the reasons stated below, CSX's Motion for Summary

Judgment is GRANTED and River Enterprises and Quillen's Motion for Summary Judgment is

DENIED.

BACKGROUND

On April 9, 2003, CSX and River Enterprises entered into a Purchase Contract (the "Purchase Agreement") for the purchase and sale of 21.9 acres of land located in Hagerstown, Maryland.  (*See* CSX's Mot. for Summ. J. Ex. A.)  River Enterprises agreed to pay CSX $2.3 million for the property and placed $50,000.00 in escrow as a deposit.  (*Id*. at §§ 2.1 & 3.1.)  At the closing, which was scheduled for September 30, 2003, the parties agreed that the deposit would be applied toward the purchase price.  (*Id*. at §§ 9 & 3.2.)

On August 4, 2003, River Enterprises executed its first extension agreement ("First Extension Agreement"), which amended the terms of the Purchase Agreement to delay the closing until December 1, 2003.  (*See* CSX's Mot. for Summ. J. Ex. C.)  River Enterprises also agreed that the $50,000.00 deposit "is hereby made non-refundable for any reason and shall be forfeited to Seller if Buyer fails to Close," and that the property would be conveyed by quitclaim deed.  (*Id*.)

On November 12, 2003, River Enterprises executed a second extension agreement ("Second Extension Agreement"), which further amended the terms of the Purchase Agreement by increasing the purchase price to $2.5 million and extending the closing date to February 27, 2004.  (*See* CSX's Mot. for Summ. J. Ex. D.)

On March 3, 2004, River Enterprises executed a third extension agreement ("Third Extension Agreement"), which further amended the terms of the Purchase Agreement by extending the closing until June 30, 2004.  (*See* CSX's Mot. for Summ. J. Ex. E.)  As "compensation for this extension," River Enterprises agreed to escrow an additional $100,000.00, "which shall be non-refundable and *shall not* be applied to the Purchase Price."  (*Id*. (emphasis in original).)  Quillen, as the escrow agent, acknowledged that River Enterprises

"placed an additional $100,000.00 in escrow" with respect to the property.  (*Id.*; *see also* CSX's Mot. for Summ. J. Ex. A., p. 11 (identifying Quillen as the escrow agent under the Purchase Agreement.))

On July 2, 2004, River Enterprises executed a fourth extension agreement ("Fourth Extension Agreement"), which further amended the terms of the Purchase Agreement by extending the closing until August 31, 2004.  (*See* CSX's Mot. for Summ. J. Ex. F.)  In addition, River Enterprises agreed to escrow an additional $100,000.00 as "compensation for this extension."  (*Id.*)  The parties agreed that these funds "shall be non-refundable and *shall not* be applied to the Purchase Price."  (*Id.* (emphasis in original).)

On August 20, 2004, River Enterprises executed a fifth extension agreement ("Fifth Extension Agreement"), which further amended the terms of the Purchase Agreement by extending the closing until October 29, 2004.  (*See* CSX's Mot. for Summ. J. Ex. G.)  As "compensation for this extension," River Enterprises agreed to escrow an additional $200,000.00, "which shall be non-refundable and *shall not* be applied to the Purchase Price." (*Id.* (emphasis in original).)   Quillen acknowledged that River Enterprises "made an additional escrow deposit in the amount of $200,000.00."  (*Id.*)

On October 25, 2004, River Enterprises executed its sixth extension agreement ("Sixth Extension Agreement"), which further amended the terms of the Purchase Agreement by extending the closing until November 23, 2004.  (*See* CSX's Mot. for Summ. J. Ex. H.)  River Enterprises agreed to escrow an additional $200,000.00 as "compensation for this extension." (*Id.*)  The parties agreed that these funds "shall be non-refundable and *shall not* be applied to the Purchase Price."  (*Id.* (emphasis in original).)  Finally, River Enterprises agreed to transfer all monies held in escrow by Quillen to another escrow agent within two days of October 25, 2004.

(*Id.*)

On November 23, 2004, River Enterprises failed to close on the purchase of CSX's property.  (*See* CSX's Mot. for Summ. J. Ex. B, ¶ 12.)  Accordingly, after informing River Enterprises and Quillen that CSX had formally terminated the Purchase Agreement, CSX demanded immediate surrender of the initial deposit and extension monies, which totaled $650,000.000.  (*See* CSX's Mot. for Summ. J. Ex. A,  17.1 & Ex. I.)  River Enterprises and Quillen refused to remit the $650,000.00 which had purportedly been placed in Quillen's escrow account.  (*See* CSX's Mot. for Summ. J. Ex. B, ¶ 17.)

On January 14, 2005, CSX filed a complaint against River Enterprises and Quillen.  On March 17, 2005, CSX filed its Motion for Summary Judgment.[1]  On November 29, 2005, River Enterprises and Quillen filed their Motion for Summary Judgment.  On December 13, 2005, CSX filed its Motion for Default Judgment as to River Enterprises.[2]

<u>STANDARD OF REVIEW</u>

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material

---

[1]     CSX seeks summary judgment on two of the three counts in CSX's complaint, *viz.*, Counts I and II, but not Count III.  Count III—which is not addressed in this Memorandum Opinion—asserts a claim for breach of fiduciary duty against Quillen.

[2]     CSX seeks default judgment on Count I against River Enterprises for failure to provide discovery.  This motion is rendered moot by the Court's ruling in this Memorandum Opinion.

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.  In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369  U.S. 654, 655 (1962)), but the opponent must bring forth evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment.  *Anderson*, 477 U.S. at 252.

As there are pending cross-motions for summary judgment, this Court applies the same standards of review.  *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991); *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve issues of material facts on a motion for summary judgment—even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied*, 469 U.S. 1215 (1985).  The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985).  "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 325 (10th Cir. 1967); *see also McKenzie v. Sawyer*, 684 F.2d 62, 68

n.3 (D.C. Cir. 1982) ("neither party waives the right to a full trial on the merits by filing its own

motion.").  However, when cross-motions for summary judgment demonstrate a basic agreement

concerning what legal theories and material facts are dispositive, they "may be probative of the

non-existence of a factual dispute." *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983).

DISCUSSION

## I.      Breach of Contract

As the jurisdiction of this Court is based on diversity of citizenship, pursuant to 28 U.S.C.

§ 1332, this Court applies state law, including state common law.  *Erie RR v. Tompkins*, 304 U.S.

64 (1938).  Maryland courts generally follow the rule of *lex loci contractus*, which requires that the

construction and validity of a contract is determined by the law of the state where the contract was

made.  *See, e.g., Allstate Ins. Co. v. Hart*, 327 Md. 526, 529 (Md. 1992).  A contract is made where

the last act necessary to make the contract binding occurs.  *See, e.g., Sting Sec., Inc. v. First Mercury

Syndicate, Inc.*, 791 F. Supp. 555, 558 (D. Md. 1992).  The Purchase Agreement, as amended by the

Extension Agreements, were signed and executed by River Enterprises and Quillen, both of whom

are located in Maryland.  Accordingly, as a matter of law, these agreements are governed by

Maryland law.  To prevail in an action for breach of contract, CSX must prove that River Enterprises

and Quillen owed CSX certain contractual obligations, and that River Enterprises and Quillen

breached those obligations.  *See, e.g.*, *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (Md. 2001)

(citing *Continental Masonry Co., Inc. v. Verdel Const. Co., Inc.*, 279 Md. 476, 480 (Md. 1977).

In this case, there is no genuine issue of material fact with respect to River Enterprises'

breach of its contractual obligations to CSX under the Purchase Agreement, as amended by the

Extension Agreements (the "Amended Purchase Agreement").  For example, the Amended Purchase

Agreement requires that:

> The balance of the Purchase Price shall be paid at settlement or closing of the transaction (hereinafter the "Closing"), in cash, by certified or cashier's check, or by other readily available funds acceptable to Seller.

(CSX's Mot. for Summ. J. Ex. A, § 3.1; *see also* CSX's Mot. for Summ. J. Ex. D (where parties agreed that the Purchase Price is $2.5 million) & Ex. H (where parties agreed that the Closing would take place on or before November 23, 2004.)

River Enterprises does not dispute that it failed to close on November 23, 2004.  (*See*, *e.g.*, CSX's Mot. for Summ. J. Ex. B, ¶ 12.)  Under the Amended Purchase Agreement, this failure entitles CSX to retain the funds that River Enterprises placed in escrow:

> In the event of a default by Buyer under this Agreement (including, but not limited to payment of the Deposit within the time specified), Seller may elect to terminate this Agreement by delivery of notice to Buyer and *to retain the Deposit and any other money paid by Buyer to or for the account of Seller*, as agreed-upon liquidated damages in full settlement of any and all claims arising under or in any way related to this Agreement.

(CSX's Mot. for Summ. J. Ex. A, § 17.1 (emphasis added) & § 17.4 (providing that an event of default "shall include . . . the failure to make prompt payment of any sums when due under this Agreement . . ."); *see also* CSX's Mot. for Summ. J. Exs. C-H (where parties agreed that the $650,000.00 placed in escrow is non-refundable).)

There is also no dispute that Quillen breached certain contractual obligations owed to CSX. At the hearing on December 16, 2005, Quillen's counsel acknowledged  to this Court that, despite Quillen's prior representations to the Plaintiff,  the escrow account maintained by Quillen does not in fact contain any funds deposited by River Enterprises.  Accordingly, there is no genuine issue of material fact with respect to the violation of Section 21 of the Amended Purchase Agreement, which provides:

> The Escrow Agent is authorized and agrees by acceptance thereof to

> deposit promptly into an interest bearing account in a Federally insured bank and *to hold the Deposit and any other funds received hereunder* or in connection herewith in escrow and subject to clearance thereof *to disperse same in accordance with the terms and conditions of this Agreement*.  Failure of clearance of funds shall not excuse performance by the Buyer. . . .

(CSX's Mot. for Summ. J. Ex. A, § 21 (emphasis added); *see also* CSX's Mot. for Summ. J. Exs. C-H (where parties agreed that escrow funds are non-refundable); CSX's Mot. for Summ. J. Exs. E & G (where Quillen confirmed in letters to CSX that River Enterprises placed certain funds in escrow); CSX's Mot. for Summ. J. Ex. B, ¶ 17 (confirming that Quillen has not disbursed the escrow funds to CSX).)

In sum, the admissible evidence forecast by the parties "demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).  Accordingly, CSX is entitled to summary judgment with respect to its breach of contract claims against River Enterprises and Quillen.

## II.    Consideration

River Enterprises' and Quillen's only substantive challenge to CSX's motion is their contention that the Amended Purchase Agreement is void because "[CSX's] promise was entirely one-sided and illusory."  (River Enterprises' Mot. for Summ. J., p. 4.)[3]  This challenge fails,

---

[3]    River Enterprises and Quillen initially responded to CSX's Motion for Summary Judgment by arguing that, first, "there has been no authentication of any of the documents upon which [CSX] relies" and, second,  that discovery is needed to test CSX's claim that it was "ready, willing and able to close on the Purchase Agreement at all times." (Opp'n to CSX's Mot. for Summ. J., p. 1.)  CSX resolved the first argument by submitting affidavits that authenticate each of the documents at issue.  (*See* CSX's Reply in Support of Mot. for Summ. J. Exs. 1-4.) The second argument is based on a claim—that CSX was *not* ready, willing, and able to close on the Purchase Agreement—that is wholly unsupported.  There is nothing in the record before this Court to suggest that CSX was unable or unwilling to close from September 30, 2003 (the closing date under the Purchase Agreement) through November 23, 2004 (the closing date under

however, for two reasons.  First, the Amended Purchase Agreement provides that, in the event of

a breach by CSX, River Enterprises is entitled to recover from CSX reasonable third-party

expenses not to exceed $25,000.  Second, the Extension Agreements provide additional

consideration to support the Amended Purchase Agreement.

River Enterprises and Quillen argue that the Amended Purchase Agreement is rendered

illusory by Section 17.2 of the Amended Purchase Agreement, which limits the remedies

available to River Enterprises:

> In the event of a default by Seller under this Agreement, Buyer's sole
> and exclusive remedy shall be to terminate this Agreement by
> delivery of notice to Seller and to receive an immediate return of the
> Deposit and reimbursement for any reasonable third-party expenses
> incurred by Buyer pursuant to this Agreement, not to exceed $25,000,
> as agreed-upon liquidated damages in full settlement of any and all
> claims arising under or in any way related to this Agreement. *Buyer
> irrevocably waives any and all right to pursue specific performance
> of this Agreement or any other legal or equitable remedy otherwise
> available to Buyer.*

(CSX's Mot. for Summ. J. Ex. A, § 17.2 (emphasis added).)  River Enterprises and Quillen

contend that, "[b]y stripping [River Enterprises] of any remedy for breach of the Agreement[,

CSX] reserved unto itself complete discretion as to whether or not to perform its promise to sell.

Such unfettered discretion vitiates any consideration which [River Enterprises] may have

---

the Purchase Agreement, as amended by the Sixth Extension Agreement).  CSX has submitted
declarations and affidavits establishing that CSX was ready, willing, and able to close on the
relevant dates (*see* CSX's Mot. for Summ. J. Ex. B, ¶ 12), and that CSX actually tendered
performance by delivering to River Enterprises the deed called for by the Amended Purchase
Agreement (*see* CSX's Reply in Support of its Mot. for Summ. J. Ex. 2).  River Enterprises and
Quillen, however, failed to bring forth any evidence to create a genuine issue of material fact
with respect to CSX's ability or willingness to close.  Accordingly, River Enterprises and
Quillen's initial responses fail to defeat CSX's Motion for Summary Judgment.  *See, e.g.,
Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (nonmoving
party must set forth specific facts demonstrating a genuine issue for trial to resist summary
judgment).

received for its own promises under the Agreement and voids the agreement *ab initio*."  (River

Enterprises' Mot. for Summ. J., p. 3.)

River Enterprises' and Quillen's argument fails as a matter of law, however, because

Section 17.2 clearly provides that, in the event of a breach by CSX, River Enterprises is entitled

to "reimbursement for any reasonable third-party expenses incurred by Buyer pursuant to this

Agreement, not to exceed $25,000."  (CSX's Mot. for Summ. J. Ex. A, § 17.2.)  This

obligation—the enforceability of which is not contested by River Enterprises and

Quillen—provides consideration for the promises made by River Enterprises in the Purchase

Agreement.  *See*, *e.g.*, *Harford County v. Town of Bel Air*, 348 Md. 363, 382 (Md. 1998)

("[u]nder our decisions . . . 'a benefit to the promisor or a detriment to the promisee' [is]

sufficient to constitute 'valuable consideration.'"); *see also Cheek v. United Healthcare of

Mid-Atlantic, Inc.*, 378 Md. 139, 166-67 (Md. 2003) ("'The Courts of Law, in the absence of

fraud, will not inquire into the adequacy of the value extracted for the promise so long as it has

some value.'") (quoting *Blumenthal v. Heron*, 261 Md. 234, 242-43 (Md. 1971)).

River Enterprises' and Quillen's argument also ignores the effect of the six Extension

Agreements, each of which provide additional consideration to support the Amended Purchase

Agreement.  The First Extension Agreement, for example, was executed shortly after River

Enterprises failed to close on September 30, 2003, the closing date established by the Purchase

Agreement.  At that time, CSX elected not to exercise its rights under the Purchase Agreement

(which included retaining the $50,000.00 deposit that River Enterprises placed in escrow) and

instead agreed to extend the closing until December 1, 2003.  (*See* CSX's Mot. for Summ. J. Ex.

A, § 17.1 & Ex. C.)  In return, River Enterprises agreed that the $50,000.00 deposit would be

non-refundable and that the property would be conveyed by quitclaim deed.  (*Id*.)  It follows that

the Purchase Agreement, as amended by the First Extension Agreement, was supported by

consideration.  *See*, *e.g.*, *Richard F. Kline, Inc. v. Shook Excavating & Hauling, Inc.*, 885 A.2d

381, 391 (Md. Ct. Spec. App. 2005) ("The compromise and mutual agreement of the parties to

vary the terms and enter into a new contract constitute sufficient consideration to support the

agreement.") (citing *Freeman v. Stanbern Const. Co.*, 205 Md. 71, 78 (Md. 1954)); *see also*

*Smelkinson Sysco v. Harrell*, 162 Md. App. 437, 451 n.5 (Md. Ct. Spec. App. 2005) ("When

parties are sophisticated and externalities are absent, courts do not review the parties' contractual

choices for reasonableness.").

     A similar analysis can be performed for each of the Extension Agreements,[4] including the

Sixth Extension Agreement, which amended the Purchase Agreement for the final time.  The

Sixth Extension Agreement was executed shortly before October 29, 2004, the closing date

established by the Purchase Agreement and the five prior Extension Agreements.  At that time,

instead of waiting for River Enterprises to fail to close on October 29, 2004 (which would have

permitted CSX to recover $450,000.00 in non-refundable deposit and extension funds that River

Enterprises previously placed in escrow), CSX agreed to extend the closing until November 23,

2003.  (*See* CSX's Mot. for Summ. J. Ex. A, § 17.2 & Ex. H.)  In return, River Enterprises agreed

to place an additional $200,000.00 in escrow as "compensation for this extension" and transfer

all funds held in escrow by Quillen to another escrow agent.  (*Id.*)  Accordingly, the Amended

Purchase Agreement that resulted from the Sixth Extension Agreement was supported by

---

[4]     Although not addressed by the parties, this Court notes that the Extension
Agreements—particularly those which were executed *after* a scheduled closing date—could be
viewed as novations.  *See*, *e.g.*, *Mercantile Club, Inc. v. Scherr*, 102 Md. App. 757, 772 (Md. Ct.
Spec. App. 1995) ("A novation consists of four essential requirements: '(1) a previous valid
obligation; (2) the agreement of all the parties to the new contract; (3) the validity of such new
contract, and (4) the extinguishment of the old contract, by the substitution of the new one.'")
(quoting *I.W. Berman Prop. v. Porter Bros.*, 276 Md. 1, 7-8 (Md. 1975)).

consideration.  *See*, *e.g.*, *Kline v. Shook*, 885 A.2d at 391.

River Enterprises and Quillen rely exclusively on *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 378 Md. 139 (Md. 2003) to argue that the Amended Purchase Agreement is "entirely one-sided and illusory."  (River Enterprises' Mot. for Summ. J., p. 4.)  In that case, the court was asked to determine whether consideration existed to support an agreement to arbitrate. *Cheek*, 378 Md. at 144.  In holding that no such consideration existed, the court reasoned that:

> the fact that "[the employer] reserves the right to alter, amend, modify, or revoke the [Arbitration] Policy at its sole and absolute discretion at any time with or without notice" creates no real promise, and therefore, insufficient consideration to support an enforceable agreement to arbitrate.

*Id*. at 149.  The court found that the employer's ability to revoke arbitration at any time rendered the employer's promise to arbitrate entirely illusory because it did not bind or obligate the Employer in any way.  *Id*. at 148-49.  In contrast, CSX's ability to default on the Amended Purchase Agreement was subject to its binding obligation to reimburse River Enterprises "for any reasonable third-party expenses incurred by [River Enterprises] pursuant to this Agreement, not to exceed $25,000."  (*See* CSX's Mot. for Summ. J. Ex. A, § 17.2.).  Each of the Extension Agreements were executed for the benefit of the Defendant River Enterprises to permit it to avoid liability for its repeated failure to close on the purchase of CSX's property.  These Extension Agreements provide additional consideration to support the Amended Purchase Agreement.[5]  As a result, River Enterprises' and Quillen's reliance on *Cheek* is fundamentally misplaced.

---

[5]  This Court notes that CSX's Director of Real Estate Services Daniel K. Hurley stated in a declaration that from April 9, 2003 through November 23, 2004, CSX "removed the Property from the market in anticipation of the Closing pursuant to the terms of the [Amended Purchase Agreement]."  (Supp. Decl. in Support of CSX's Mot. for Summ. J.)

**III.    Quillen's Liability**

Having addressed the breach of contract and consideration issues, this Court will consider Quillen's argument that because the record evidence "only indicate[s] that Mr. Quillen verified the receipt of $300,000.00 in deposits . . . there exists a question of fact with respect to the *extent* of Mr. Quillen's liability in this case which would preclude the entry of summary judgment."[6]  (Supp. Opp'n to CSX's Mot. for Summ. J., p. 1 (emphasis added).)

As a preliminary matter, Quillen does not dispute his obligation to abide by the terms of the escrow agreement in the Amended Purchase Agreement, which generally provides that Quillen must hold, disperse, and account for all funds placed in escrow in accordance with the terms of the Amended Purchase Agreement:

> ESCROW AGREEMENT: The Escrow Agent is authorized and agrees by acceptance thereof to deposit promptly into an interest bearing account in a Federally insured bank and to hold the Deposit and any other funds received hereunder or in connection herewith in escrow and subject to clearance thereof to disburse same in accordance with terms and conditions of this Agreement.  Failure of clearance of funds shall not excuse performance by the Buyer.  In the event of doubts as to Escrow Agent's duties or liabilities under the provisions of this Agreement, the Escrow Agent may in its sole discretion, continue to hold the subject matter of this escrow until the parties mutually agree to the disbursement thereof, or until a judgment of a court of competent jurisdiction shall determine the rights of the parties thereto, or Escrow Agent may interplead same with the Court having jurisdiction of the dispute, and upon notifying all parties concerned of such action, all liability on the part of the Escrow Agent shall fully terminate, except to the extent of accounting for any items theretofore delivered out of escrow. . . .

---

[6]    This Court notes that Quillen's letters to CSX appear to verify the receipt of $450,000.00 in deposits, not $300,000.00.  In a letter to CSX dated August 24, 2004, Quillen "confirm[ed] that the Buyer has made an *additional* escrow deposit in the amount of $200,000.000."  (CSX's Mot. for Summ. J., Ex. G (emphasis added).)  Quillen's use of the word "additional" makes no sense unless it applies to the prior deposits made by River Enterprises, which at that time totaled $250,000.00.  Accordingly, Quillen's August 24 letter appears to verify the receipt of $450,000.00 in deposits.

(*See* CSX's Mot. for Summ. J. Ex. A, § 21.)

As this Court has already noted, Quillen does not dispute his failure to comply with the above escrow agreement.  At the hearing conducted on December 16, 2005, Quillen's counsel represented to this Court that the escrow account maintained by Quillen does not contain any funds deposited by River Enterprises.  There is no dispute that River Enterprises represented that it had placed $650,000.00 into Quillen's escrow account as required by the Extension Agreements.  Accordingly, there was a clear violation of the escrow agreement in the Amended Purchase Agreement which required the deposit of these funds.

Alternatively, the Defendant Quillen presents argument to this Court regarding the extent of his liability.  He does not, and indeed cannot, dispute the representations that he was to receive the $650,000.00 that River Enterprises agreed to place in escrow.  Instead, Quillen contends that "the exhibits which the Plaintiff has affixed to the Motion only indicate that Mr. Quillen *verified* the receipt of $300,000.00 in deposits."  (Supp. Opp'n to CSX's Mot. for Summ. J., p. 1 (emphasis added).)[7]  There is, however, no requirement that CSX prove that Quillen

---

[7]     This is not the first time that Quillen, River Enterprises, and their counsel have carefully crafted pleadings to avoid addressing whether River Enterprises and/or Quillen actually placed deposits in escrow:

> River, perhaps intentionally, has carefully worded its brief and the supporting affidavits when discussing the deposits. For example, Quillen, in his affidavit, never directly avers that the deposits were made.  He merely says, "In my experience, the transmission of a letter from an attorney has generally been sufficient evidence of the existence of a deposit for the purchase of real property." Similarly, Frank Derose, marketing and sales agent of River, never states in his affidavit that he made the deposits.

*River Enterprises v. Tamiri Properties, et al.*, 2005 WL 356823, *2 n.6, 2005 Del. Ch. LEXIS 26, *7 n.6 (Del. Ch. 2005).

verify the receipt of all deposits made by River Enterprises.  The exhibits submitted by CSX—in particular, the Extension Agreements—set forth facts showing that River Enterprises agreed to deposit $650,000.000 into Quillen's escrow account.  (*See* CSX's Mot. for Summ. J. Exs. C-H.) These exhibits are not disputed in any way by Quillen or River Enterprises.  Therefore, to defeat summary judgment, Quillen had to submit evidence supporting his position "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Quillen's verification letters, which were not made under oath or declaration, fail to meet this burden.  Accordingly, this Court finds that Quillen has failed to demonstrate any genuine issue of material fact with respect to the extent of his liability.  *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (nonmoving party must set forth specific facts demonstrating a genuine issue of trial to resist summary judgment).

## CONCLUSION

For the reasons stated above, CSX's Motion for Summary Judgment is GRANTED on Counts I and II of the Complaint and the Motion for Summary Judgment of the Defendants River Enterprises and Quillen is DENIED.  In light of this Court's ruling, CSX's Motion for Default Judgment as to Count I for failure to provide discovery is MOOT.  A separate Order follows.


Dated: <u>December 28, 2005</u>                    /s/_____
                                                Richard D. Bennett
                                                United States District Judge